UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RVASSETS LTD, <br><br> Plaintiff, <br><br> v. <br><br> MAREX CAPITAL MARKETS INC., <br> DAVID HOFFMAN, <br> AND JASON MARGIOTTA, <br><br> Defendant. | Case No. 1:23-cv-14192 <br><br> District Judge April M. Perry <br><br> Magistrate Judge Albert Berry III |

## ORDER

Plaintiff's Motion to Compel [71] and Defendant's Motion to Compel [75] are granted, for the reasons explained below. Plaintiffs are ordered to clearly define the alleged trade secret and answer Defendants' interrogatory within fourteen days of this Order (by 7/28/2025). Defendants are ordered to answer Plaintiff's Request for Production discussed below within twenty-one days of this Order (by 8/4/2025).

## BACKGROUND

### I. Procedural History

In 2023, Plaintiff RVassets Ltd. ("RVassets") filed a lawsuit in the Northern District of Illinois alleging that Defendants Marex Capital Markets Inc., David Hoffman, and Jason Margiotta (collectively "Defendants") had misappropriated its trade secrets. See Dkt. 1. Defendants moved to dismiss Plaintiff's claims. See Dkt. 24. Judge Ellis granted the motion with respect to claims of tortious interference with economic advantage, violation of the Illinois Deceptive Trade Practices

1

Act (815 ILCS 510/1 et seq.), unfair competition, common law fraud, fraudulent concealment, and unjust enrichment. Dkt. 35. The Court denied dismissal of the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. 1065/1 et seq., and Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1839 et seq. claims. *Id.* The motions to compel relate to the efforts of the parties to conduct discovery to prove and disprove the claims set forth in the complaint.

## II. Factual Background

RVassets sued Defendants for allegedly misappropriating trade secrets from its RVa Software by reverse engineering proprietary functions. Dkt. 35 at 1. Plaintiff alleges violations of the ITSA and the DTSA *Id.*

RVassets is a London, England-based corporation organized under United Kingdom law and was founded by Thomas Fitch. *Id* at 2. The company specializes in licensing proprietary algorithms that facilitate electronic pricing of option contracts and trade execution on the Chicago Mercantile Exchange ("CME"). *Id.* Marex is a New York corporation that regularly conducts business on the CME and maintains a location in Chicago, Illinois. *Id.* Marex operates on the CME as a registered service provider, soliciting institutional clients and investors for option pricing and trading. *Id.*

According to the Plaintiff, Marex, was a customer of RVassets and utilized its software platform to price and execute listed options trades, primarily on the Chicago Mercantile Exchange (CME). *Id.* Dkt. 1, ¶ 20. In 2016, Marex gained access to the RVa Software via the RVa Platform. Dkt. 35 at 5. Defendants David Hoffman and Jason Margiotta were hired by Marex in 2018-2019 and developed OptionsLive, a competing platform for options pricing and trading. Dkt. 1 ¶¶ 68-69.

Plaintiff alleges that Defendants misappropriated RVassets' trade secrets embedded in the RVa Software. *Id* at ¶ 21. RVassets alleges that Marex misled them into believing Hoffman and Margiotta were part of its brokerage team pricing options for clients. Dkt. 35 at 14. RVassets then allegedly provided Margiotta with login credentials to access the RVa Platform and trade options using the RVa Software. *Id.*

RVassets offers access to the RVa Software through a user interface that allows customers to price options and execute trades automatically via the RVa Platform. Dkt. 35 at 4. According to the Complaint, the "uniqueness of the RVa Software and its centrality to RVassets's business, RVassets maintained the inner workings of the RVa Software as a trade secret." Dkt. 1 ¶ 42. RVassets alleges that Defendants exploited their access to the RVa Platform to "probe [the RVa Software's] inner workings to glean information" embedded in its algorithms. *Id*. ¶ 85. Plaintiff alleges that this access allowed Defendants to test their prototype of OptionsLive against the output generated by the RVa Platform. Dkt. 35 at 6.

According to the Plaintiff, during a visit to Marex's office, RVassets employee Adam Mann observed Margiotta sharing a desk and working closely with Hoffman, Robert Lee, and Dean Aldridge. Dkt 35 at 5. Lee and Aldridge were brokers who had been given login credentials by RVassets to use the RVa Software. *Id* at 5-6. In 2019, RVassets observed Lee executing economically insignificant trades or withdrawing trades that did not complete. *Id* at 6. Beyond potential reverse engineering concerns, options exchanges could have perceived these trades as attempted market manipulation. *Id.* When Fitch questioned Lee about the trades, Lee claimed they were genuine but either failed to complete through the platform or were improved through voice execution on the exchange trading floor. *Id.* Plaintiffs allege that Defendants, either directly or

through Lee and Aldridge, improperly used their access to the RVa Software and RVa Platform to obtain RVassets' trade secrets. Dkt. 1 ¶ 84.

According to the Plaintiff, on September 29, 2020, Marex announced the launch of OptionsLive, marketing it "as an algorithm-based software platform for electronically pricing and executing trades of listed options." *Id*. ¶ 110-111. It promoted its "proprietary algorithms and its ability to offer real-time fractional pricing (i.e., synthetic prices that are fractions of one tick) and execution." *Id*. ¶ 112. Plaintiffs allege that OptionsLive performs functions substantially similar to the RVa Software, which RVassets claims Defendants built using its trade secrets. *Id* ¶ 114. After the launch, Marex stated on its website that it had hired Margiotta and Hoffman to develop, build, market, and co-lead OptionsLive. *Id* ¶ 119. By the end of 2020, Marex was no longer engaged as a client of RVassets. *Id* ¶ 122.

On September 27, 2023, RVassets filed a lawsuit against the Defendants. Dkt. 1. While engaged in the discovery process, disputes arose. The parties attempted to work out the disputes without court intervention but could not reach an amicable resolution. Soon thereafter, both Plaintiff and Defendants filed motions to compel the other to produce certain information. Dkts. 71 and 75. On July 1, 2025, a hearing was held for arguments on the respective motions. Dkt. 82.

## DISCUSSION

### I. Discovery

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discoverable information as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

4

proposed discovery outweighs its likely benefit." "Under general discovery principles, the party seeking to compel discovery has the burden of showing relevance." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 978 (N.D. Ill. 2021). "If that occurs, the burden then shifts to the objecting party to establish that the discovery request is irrelevant or otherwise improper." *Dobbey v. Taylor*, No. 21 C 3762, 2023 WL 2572432, at *7-8 (N.D. Ill. Mar. 20, 2023).

## II. ITSA and DTSA

To establish a claim under the ITSA and the DTSA, a plaintiff must demonstrate that the disputed information qualifies as a trade secret, was misappropriated, and was used in the defendant's business. *See REXA, Inc. v. Chester*, 42 F.4th 652, 662 (7th Cir. 2022). A trade secret consists of (1) business-related information, (2) reasonable measures taken to maintain its secrecy, and (3) economic value derived from its confidential nature. *See* 18 U.S.C. § 1839(3). ITSA defines misappropriation in part as the "acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means." 765 Ill. Comp. Stat. 1065/2(b)(1).

## III. Defendants' Motion to Compel and Plaintiff's Trade Secret

Defendants' motion seeks to compel Plaintiff to "(1) identify with particularity its purported trade secrets in response to Interrogatory No. 1; and (2) provide the additional critical information and details on its purported trade secrets also in response to Interrogatory No. 1." Dkt. 75.

> **INTERROGATORY NO. 1** Identify with particularity each individual Trade Secret that you assert was misappropriated by any Defendant, including by describing in detail:
> a. The function and operation of the Trade Secret;
> b. All persons who authored, created, or developed, or assisted in the authoring, creation, or development of, the Trade Secret;

5

> c. The portions of the Trade Secret that are original to RVassets;
> d. The portions of software underlying the Trade Secret that were authored, created, or
> developed, in whole or in part, by any person other than RVassets, or owned or coowned by any person other than RVassets;
> e. The date the Trade Secret was created or developed;
> f. All steps taken since the creation of the Trade Secret to maintain it as secret; and
> g. How the Trade Secret differs from what was publicly disclosed prior to any alleged misappropriation by any Defendant.
>
> In responding to this Interrogatory No. 1, do not simply identify the Trade Secret(s)'s general subject matters, categories of information, or names of documents without specifying what information within the general subject matters, categories, or documents allegedly constitute the Trade Secret(s).

Dkt. 72-7

Upon review of both Plaintiff's initial and supplemental responses to Interrogatory No. 1, the Court finds that Plaintiff has provided partial information but has not fully addressed the interrogatory in its entirety. Dkt. 72-7. As discussed during the motion hearing, the Court notes that Plaintiff's response, particularly the final paragraph concerning identification of the alleged trade secret, lacks sufficient clarity and specificity. The description offered remains overly general and does not adequately articulate the trade secret.

On July 1, 2025, the Court held a hearing on the motions filed by the Plaintiff and Defendants. During the hearing, Plaintiff's counsel acknowledged that their response to Defendant's Interrogatory No. 1—which requested, among other details, the identification of the alleged trade secret—lacked sufficient specificity ("Could we potentially be more specific? Sure."). Under both the ITSA and DTSA, a "trade secret" is defined as: "Information, including but not limited to technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers,

that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." See *Moss Holding Co*. v. *Image Options, Inc*., No. 20-cv-01043 (N.D. Ill. 2020); 765 ILCS 1065/2(d); see also 18 U.S.C. § 1839(3). As litigation proceeds, the resolution of discovery disputes—particularly those requiring court intervention—rests within the broad discretion of the court. *Cobian v. McLaughlin*, 804 F. App'x 398, 400 (7th Cir. 2020). In the Northern District of Illinois, plaintiffs must identify the alleged trade secret with reasonable specificity before being entitled to discover the opposing party's confidential information. *AutoMed Techs., Inc*. v. *Eller*, 160 F. Supp. 2d 915, 925–26 (N.D. Ill. 2001).

In this case, both parties acknowledge a lack of mutual clarity as to the nature and scope of the alleged trade secret. Vagueness in the definition of the trade secret alleged to have been misappropriated, does neither party any favors here. Precise identification and definition are crucial to resolving central issues and to ensuring the discovery process remains proportional and focused. Without clear articulation, discovery efforts may become unduly burdensome and inefficient under the standards established by the Federal Rules of Civil Procedure.

Failure to define such trade secrets in discovery contributes to confusion, hinders effective responses by the defense, and disrupts the orderly progression of litigation. Plaintiff's admission during the hearing underscores the importance of specificity at this stage.

While Plaintiff has made efforts to respond, the answers omit critical details necessary for Defendants to assess and respond to the claim of trade secret misappropriation. Under the governing standards of both the ITSA and DTSA, trade secret identification must be made with

reasonable particularity to satisfy discovery obligations and support proportional, focused information exchange.

The Court concludes that the Plaintiff's reliance on *Superior Graphite Co*, is unpersuasive. The factual circumstances in the present case diverge significantly from those in *Superior Graphite*, particularly with respect to the scope and nature of indemnification provided by the Plaintiff in relation to the alleged trade secret. See Dkt. 79 at 5.

Furthermore, although Plaintiff made an effort to address the individual subparts of Interrogatory 1, the response remains incomplete. Specifically, the last paragraph of the Interrogatory remains incomplete.

In light of these considerations, the Court orders Plaintiff to provide a clear and definitive statement of the alleged trade secret and answer rest of the interrogatory, with particularity, within 14 days of this Order (by 7/28/25).

### IV. Plaintiff's Motion to Compel

Plaintiff's motion seeks to compel "(1) Defendant Marex Capital Markets Inc. to produce the documents sought by Request for Production No. 18; and (2) Defendants David Hoffman and Jason Margiotta to produce the documents sought by Request for Production No. 12." Dkt. 72 at 9. Requests No. 18 and 12 have the same language but are directed at different defendants.

> **REQUEST NO. 18** Documents and communications sufficient to show all algorithms (including algorithms for pricing and trading listed options) embodied in or utilized by any version of OptionsLive (including all precursors created during development, such as prototypes), including the functionality, operation, conception, and development of each algorithm.

Dkt. 72-1-3.

RVassets claims that Defendants misused access to its options trading software to create OptionsLive and misappropriated its trade secrets through that platform. Plaintiff's motion seeks to compel discovery, arguing that Defendants have refused to respond to key discovery requests because they are dissatisfied with RVassets's discovery responses. The disputed document requests seek discovery into OptionsLive's algorithms, which RVassets asserts were developed using its proprietary algorithms.

*First*, the Court finds that the discovery requests at issue are aimed at securing information that is both relevant and proportional to the underlying claims in this matter. Specifically, the requests seek discovery regarding the algorithms used in the OptionsLive platform, including their creation, design, and functionality. The Court agrees that the requested discovery is appropriate, as it directly relates to how the algorithms were developed and deployed, which is central to the claims in this case.

*Second*, the Court concludes that Defendants have failed to meet its burden in showing that responding to Request for Production No. 18 and No. 12 ("RFP 18 and 12") would impose an undue burden or would be disproportionate to the needs of the litigation. Notably, Defendants have not provided any factual support, explanation, or evidence to substantiate its assertion that RFP 18 and 12 is unduly burdensome.

*Third*, the Court rejects Defendants' contention that Plaintiff's request is vague or ambiguous. Upon review, the Court finds that the language of the request is sufficiently clear, specific, and tailored to the issues in this case. The request provides an adequate level of detail and is not couched in indefinite or overly broad terms. Therefore, it satisfies the requirements for clarity and particularity under the applicable procedural rules.

*Fourth*, the Court finds that Defendants' argument that they are unable to answer this discovery request due to Plaintiff's failure to sufficiently identify its own trade secret is now rendered moot by this Order which requires the Plaintiff to produce its "trade secret" to Defendants prior to Defendants compliance with the Request for Production. See Dkt. 76 at 12.

Therefore, the discovery sought by RFP 18and 12 is relevant and proportional to the needs of the case and Plaintiff's motion to compel [71] is granted and Defendants must answer within twenty-one days of this order (by 8/4/25).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel [71] and Defendant's Motion to Compel [75] are hereby granted. Plaintiffs are ordered to clearly define the alleged trade secret and answer Defendants' interrogatory within fourteen days of this Order (by 7/28/2025). Defendants are ordered to answer Plaintiff's Request for Production discussed below within twenty-one days of this Order (by 8/4/2025).

Dated: July 14, 2025

ALBERT BERRY III
United States Magistrate Judge