**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RVASSETS LTD., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 23-cv-14192 |
| v. | § | Judge April M. Perry |
| | § | Magistrate Judge Albert Berry III |
| MAREX CAPITAL MARKETS INC., | § | |
| DAVID HOFFMAN AND JASON | § | **JURY TRIAL DEMANDED** |
| MARGIOTTA, | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF RVASSETS LTD.'S MEMORANDUM IN SUPPORT OF
MOTION TO ENFORCE THE COURT'S DISCOVERY ORDER**

The Court previously granted Plaintiff RVassets Ltd.'s ("RVassets") Motion to Compel Defendants[1] to provide discovery.  Dkt. 84 at 8-10.  The Court's Order required Defendants to produce documents sufficient to show all algorithms used by any version of OptionsLive, including the conception and development of each algorithm.  *Id.*

Defendants did not comply with the Court's Order.  Instead, Defendants made selected files taken from their source code repository available for inspection on a review computer.  Only a single version of each selected source code file was provided.  This production is incomplete for two reasons.  First, it fails to show all algorithms used by any version of OptionsLive, and at best only shows the algorithms used in one particular version of OptionsLive.  Second, it fails to show the conception and development of each algorithm in the various versions of OptionsLive.

---

[1] The Defendants for purposes of this Motion are Marex Capital Markets Inc. ("Marex") and Jason Margiotta ("Mr. Margiotta") (collectively, "Defendants").  RVassets has not included defendant David Hoffman based on his representation that he has no responsive documents for the relevant request for production.

As the Court previously held, the discovery the Court ordered is "central to the claims in this case." Dkt. 84 at 9. The OptionsLive algorithms, including their conception and development, are particularly important in this trade secrets case, where RVassets contends that OptionsLive's development and algorithms are a result of trade secret misappropriation. Defendants, on the other hand, contend that OptionsLive was independently developed without reference to RVassets's trade secrets. RVassets must have discovery into the OptionsLive algorithms and their conception and development to fairly litigate its case, but Defendants have withheld it, even in the face of a Court order. As it stands, Defendants are contending that they independently conceived and developed OptionsLive while simultaneously blocking discovery into that issue.

Due to Defendants' non-compliance with the Court's Order, RVassets seeks just orders under Federal Rule of Civil Procedure 37(b)(2)(A) and (C). In particular, RVassets respectfully requests the following relief: (1) ordering Defendants to comply with the Court's July 14 order, including producing source code for all versions of OptionsLive (including prototypes), along with documents sufficient to show the conception and development of all algorithms used in any version of OptionsLive (including prototypes); (2) ordering Defendants to provide all metadata available in the source code repository for each version of each source code file; and (3) ordering Defendants to pay RVassets's attorney's fees and expenses incurred as a result of the failure to obey the Court's Order; and (4) any other relief the Court deems just and proper.

## I. **BACKGROUND**

### A. **The Discovery Requests at Issue**

RVassets served one set of requests for production on each Defendant. Dkt. 72-1, 72-3. The requests at issue are:

- Request for Production No. 18 to Defendant Marex (Dkt. 72-1); and

- Request for Production No. 12 to Defendant Jason Margiotta (Dkt. 72-3).

Request No. 18 to Defendant Marex is exemplary of the document requests:

> **REQUEST NO. 18** Documents and communications sufficient to show all algorithms (including algorithms for pricing and trading listed options) embodied in or utilized by any version of OptionsLive (including all precursors created during development, such as prototypes), including the functionality, operation, conception, and development of each algorithm.

Dkt. 72-1 at 19. RVassets moved to compel compliance with the above requests. Dkt. 72.

### B. The Court's July 14, 2025 Order (Dkt. 84)

The Court granted RVassets's Motion to Compel and ordered Defendants to comply by August 4, 2025. Dkt. 84 at 10. In its analysis, the Court held that the full scope of discovery RVassets sought to compel was "both relevant and proportional." *Id.* at 9. The Court also found that the requested discovery "directly relates to how the algorithms were developed and deployed, which is central to the claims in this case." *Id.*

### C. Defendants' Amended Discovery Responses

Defendants did not produce any responsive documents by the deadline set by the Court. Instead, they served amended discovery responses. The responses notified RVassets that source code would be made available for inspection. Exs. A-B. Each Defendant's response is outlined below.

- Defendant Marex's response stated that "Marex will make the OptionsLive source code available for inspection." Ex. A at 2.

- Defendant Margiotta's response stated that "to the extent not already being produced by Marex, Margiotta will make the OptionsLive source code available for inspection." Ex. B at 2.

### D. Defendants' Source Code Production

RVassets was skeptical that Defendants' proffered source code inspection would satisfy the Court's Order, particularly as to the conception and development of each OptionsLive

algorithm. But not wanting to jump the gun on raising a dispute, RVassets first undertook to inspect the OptionsLive source code made available by Defendants.

RVassets's skepticism proved well-founded. It turned out that Defendants had made available only a single version of OptionsLive source code. Defendants produced no information about the algorithms used in other versions of the code or how each algorithm had been conceived and developed. RVassets accordingly informed Defendants of their violation of the Court's Order after the first day of source code inspection. Ex. C at 3.

Defendants did not provide a substantive response until over a week later, during which time Defendants disregarded RVassets's repeated requests to meet and confer. Ex. C at 1-2. Defendants ultimately contended by email that they complied with the Court's Order because they "produced the OptionsLive source code as it was developed from its creation and through its finalization." Ex. D at 5.[2] This made no sense because, by producing just one version of the code, Defendants failed to show what the algorithms were in other versions of the code or the underlying information about how those algorithms were conceived and developed.

RVassets further advised Defendants that a prototype of OptionsLive had been created in a spreadsheet. Ex. D at 4, 7. RVassets requested that the spreadsheet be produced in native format immediately pursuant to the Court's Order. *Id.* at 4. Defendants responded that "Mr. Margiotta did not create a 'prototype' of OptionsLive on a spreadsheet." *Id.* at 5.

---

[2] Confidential information has been redacted from Exhibit D to avoid an unnecessary sealing motion.

###### E.     The Meet and Confer

RVassets was seriously concerned by Defendants' responses.  They gave no colorable argument as to how Defendants' source code production satisfied the Court's Order.  Moreover, Defendants' responses contained assertions that were contradicted by other evidence or later undermined by Defendants' admissions during meet and confer.

For one thing, Defendants claimed that "there are not numbered 'versions' of OptionsLive" source code.  Ex. D at 5.  But RVassets's source code review showed that at least some source code files have associated version numbers.  RVassets identified three source code files that included a comment indicating the version number for that particular source code file.  RVassets raised this point with Defendants by email but received only bald accusations of "mischaracterizations" and "false assertions" in response.  *Id.* at 2-4.

Defendants' representation that "there are not numbered 'versions' of OptionsLive" source code (Ex. D at 5) proved to be, at best, highly misleading.  During meet and confer, Defendants admitted that at least some of the source code files do have version numbers, such as the ones RVassets identified.  Defendants also admitted that a source code repository exists for OptionsLive, but that they had not provided all of the source code files from the repository.  At a minimum, they had imposed a December 2022 date limitation.  As best RVassets could understand, Defendants produced only a single version of the code from the repository dating to approximately December 2022, despite code from other timeframes existing in the repository.  The December 2022 date is well after OptionsLive's 2020 launch, meaning Defendants withheld earlier code

going back to when the trade secret misappropriation began.[3]  Defendants also admitted that there had been at least continuing "tweaks" and "bug fixes" to the code after December 2022.  Yet that later code was also withheld even though it reflects ongoing misappropriation.  Thus, Defendants' representation that they produced OptionsLive source code "through its finalization"  (Ex. D at 5) also proved to be inaccurate.

It should be noted that RVassets is taking Defendants entirely at their word in terms of what code they produced.  It is unclear if the source code files produced are actually from December 2022, as Defendants represent, because the metadata of the source code produced appears to have been wiped when the source code was loaded to the review computer.  As such, it appears to a reviewer as though all source code files were created on the date they were copied to the source code review computer.  Thus, RVassets has no way of knowing the relevant dates for these source code files or what version of the OptionsLive software they correspond to.  RVassets inquired of Defendants how the code was retrieved from the repository to pin these questions down but could not get an answer, only promises to follow up.  This lack of answers was particularly concerning given that by the time of the meet and confer, Defendants had been out of compliance with the Court's Order for weeks.

During meet and confer, Defendants also began introducing new and untenable arguments trying to defend their incomplete production.  In particular, Defendants surprisingly argued that

---

[3] It is difficult to believe that no changes were made to the algorithms in the two years between the public launch of OptionsLive in September 2020 and December 2022, much less since development of OptionsLive first began.  On the contrary, RVassets expects there would have been multiple iterations of the algorithms even prior to the public launch.  For example, Defendant Margiotta's LinkedIn posts refer to "a solid year of writing the codebase and trading half a million contracts internally" prior to the official launch of OptionsLive.  Ex. E at 2.

the document requests at issue do not seek documents regarding the conception and development of OptionsLive algorithms. RVassets pointed out that the requests at issue expressly seek, *inter alia*, the "**conception[] and development** of each algorithm," yet Defendants maintained that conception and development documents were not required to comply with the requests. Dkt. 84 at 8 (emphasis added).

There was another troubling fact: Defendants' representation that "Mr. Margiotta did not create a 'prototype' of OptionsLive on a spreadsheet" is contradicted by evidence. In particular, a company called Creative Mines assisted in the development of OptionsLive and has a case study of it on their website. The website reports that Defendants "David Hoffman and Jason Margiotta, the two creators of OptionsLive, **built the prototype in a spreadsheet**." Ex. F at 1 (emphasis added). The website goes on to state that "the original prototype used data from a market data aggregator," and the "job was to connect the platform to the CME and adapt that market data to a format the OptionsLive algorithm could read." *Id.* at 2. After Defendants asserted in writing that the spreadsheet never existed, RVassets raised this evidence with Defendants and again received bald accusations of "mischaracterizations" and "false assertions" in response. Ex. D at 2-4. During meet and confer, Defendants maintained that there never was a spreadsheet prototype, despite the statements about the prototype by the third party developer.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 37(b)(2)(A) provides that where a party "fails to obey an order to provide or permit discovery," including an order under Rule 37(a), "the court where the action is pending may issue further just orders." Those orders "may include the following:"

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). The Court may further order the disobedient party, its attorneys, or both "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Courts have "wide latitude in fashioning appropriate sanctions." *E360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011). Sanctions "must be proportionate to the circumstances." *Ebmeyer v. Brock*, 11 F.4th 537, 547 (7th Cir. 2021). "Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case." *Id.* (quoting *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019)).

Just orders under Rule 37(b)(2) do not require a showing of willfulness, bad faith, or fault, unless the order is one for dismissal or default. *E360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011).

## III.   ARGUMENT

### A.   Defendants Disobeyed the Court's July 14 Order

The record shows that Defendants disobeyed the Court's July 14 Order. Defendants were required to produce documents sufficient to show all algorithms used in any version of OptionsLive, including the conception and development of each algorithm. Dkt. 84 at 8-10.

Defendants disobeyed the order by producing only a single version of OptionsLive source code, apparently from around December 2022. This failed the Court's Order in two ways.

First, a single version of the OptionsLive source code does not show *all* the algorithms used in *any* version of OptionsLive, from prototypes through the most current version. At best, the single version of OptionsLive provided only shows the algorithms used in that single version. Second, Defendants did not produce documents showing how those algorithms were conceived of and developed in this trade secret case, where Defendants rely on independent conception and development as a defense. Defendants' conduct is at best negligent. It is a sufficient basis to issue "just orders" under Rule 37(b)(2)(A). *E360 Insight*, 658 F.3d at 642.

## B. Defendants' Argument That RVassets Never Asked for Conception and Development Information Is Untenable

During meet and confer, Defendants argued for the first time that the document requests at issue do not seek documents regarding the conception and development of OptionsLive algorithms, and that the Court's Order therefore did not require those documents to be produced. This argument is absurd. The requests at issue seek the "*conception[] and development* of each algorithm." Dkt. 84 at 8 (emphasis added). The Court's Order further recognized that the "requests seek discovery regarding the algorithms used in the OptionsLive platform, *including their creation*, design, and functionality." *Id.* at 9 (emphasis added). "The Court agree[d] that the requested discovery is appropriate, as it directly relates to how the algorithms were *developed and deployed*, which is central to the claims in this case." *Id.* (emphasis added). Defendants' position,

that the requests do not seek conception and development of the algorithms, does not hold water and would render the language about "conception" and "development" in the requests a nullity.[4]

During meet and confer, Defendants made clear that documents regarding conception and development do exist. While Defendants suggested that they may produce such documents in the future in response to other document requests, the Court already ordered Defendants to produce the documents by August 4, 2025.[5]

Defendants' repeated attempts to avoid this discovery are meritless and unreasonable.

**C.    Ordering Defendants to Comply with the Court's Order and Awarding Reasonable Expenses Is Appropriate**

Where, as here, a party fails to comply with the full scope of a discovery order, it is appropriate to order compliance. *See, e.g.*, *LKQ Corp. v. Kia Am., Inc.*, No. 1:21-cv-03166, Dkt. 363 at *3-6 (N.D. Ill. Nov. 13, 2023) (finding a party violated discovery order and ordering compliance with an award of fees and costs).

Here, RVassets requests an order for compliance in two principal respects. First, ordering Defendants to produce source code for all versions of OptionsLive (including prototypes)—thus showing all algorithms used in any version—along with all metadata available in the source code

---

[4] To be clear, the requests are not limited to conception and development information. They also seek "all algorithms" used by "any version" of OptionsLive, including prototypes.

[5] Defendants have also never agreed, in response to any discovery request, to produce documents showing the "conception" and "development" of all OptionsLive algorithms, as the Court ordered them to do by August 4, 2025. For example, Request for Production No. 12 to Marex seeks, *inter alia*, the development of OptionsLive. Ex. G at 15 (excerpted). Marex gave a laundry list of limiting objections and only agreed to produce a limited scope of documents that appear to be primarily administrative in nature, such as timelines and budgets, rather than providing substantive information about the creation of the algorithms: "with respect to the OptionsLive functionality for fractional pricing for listed options trades and execution of such trades, reflect or refer to development plans and timelines; budgets for development, testing, or release; and costs specific to the development and release." *Id.* at 15-16.

repository for each version of each source code file.  As it stands, Defendants have produced only metadata-wiped files, and it is unclear what date or versioning system the files relate to.  *See generally* Section I.E, *supra*.  Thus, RVassets requests this relief so it is not presented with an undifferentiated mass of files whose relative versions and timelines are unclear.

Second, RV requests that Defendants be ordered to produce documents sufficient to show the conception and development of all algorithms used in any version of OptionsLive (including prototypes), thus satisfying the request for documents showing conception and development of each algorithm.

Awarding reasonable expenses, including attorney's fees, is also appropriate here.  *LKQ Corp. v. Kia Am., Inc.*, No. 1:21-cv-03166, Dkt. 363 at *3-5 (N.D. Ill. Nov. 13, 2023) (awarding fees and costs).  Indeed, absent an appropriate remedy, Defendants have lost nothing by disobeying the Court's orders and have every incentive to do so in the future.

The Court may award reasonable expenses unless Defendants' failure was substantially justified or circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(b)(2)(C).  Neither exception applies here.

First, Defendants' failure was not substantially justified.  It is apparent that Defendants did not comply with the Court's Order.  They failed to produce documents sufficient to show all OptionsLive algorithms or information showing the conception and development of each algorithm.  Any argument by Defendants that they complied is based on an unreasonable reading of the document requests and the Court's Order.  *LKQ Corp. v. Kia Am., Inc.*, No. 1:21-cv-03166, Dkt. 363 at *3-6 (N.D. Ill. Nov. 13, 2023) (party's argument was unreasonable).

Second, no circumstances make an award of expenses unjust.  If anything, circumstances make an award of expenses just and indicate a cavalier attitude toward the Court's authority.  When

RVassets brought Defendants' disobedience of the Order to their attention, they might have sought to remediate the situation or at least offered to discuss and investigate RVassets's concerns further. Instead, Defendants asserted that they had complied with the Court's Order and accused RVassets of "mischaracterizations" and "false assertions," while disregarding requests to meet and confer. Exs. C-D.  And this is to say nothing of the time and expense RVassets already had to invest in winning the Motion to Compel in the first place.  A remedy beyond the long-overdue compliance with the Court's Order is needed here.

## IV.  **CONCLUSION**

RVassets respectfully requests that the Court grant this Motion and enforce its Order.

DATED: September 10, 2025

Respectfully submitted,

/s/ Brian D. Johnston
Bradley W. Caldwell (admitted *pro hac vice*)
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady (admitted *pro hac vice*)
Texas Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry (admitted *pro hac vice*)
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
Brian D. Johnston (admitted *pro hac vice*)
Texas Bar No. 24080965
Email: bjohnston@caldwellcc.com
Robert Seth Reich Jr. (admitted *pro hac vice*)
Texas Bar No. 24088283
Email: sreich@caldwellcc.com
Bailey A. Blaies (admitted *pro hac vice*)
Texas Bar No. 24109297
Email: bblaies@caldwellcc.com
Paul Ashton Duke (admitted *pro hac vice*)
Texas Bar No. 24140082
Email: aduke@caldwellcc.com

**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile:  (214) 888-4849

G. David Mathues
Illinois Bar No. 6393314
Email: dmathues@hcbattorneys.com
**HERVAS, CONDON, AND BERSANI, P.C.**
333 W. Pierce Road
Suite 195
Itasca, Illinois 60143
Telephone: (630) 773-4774

**ATTORNEYS FOR PLAINTIFF
RVASSETS LTD.**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned herby certifies that the foregoing document was served upon all counsel of record on September 10, 2025 via the Court's CM/ECF system.

*/s/ Brian D. Johnston*

Brian D. Johnston
